It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 [section 7 above] of this title

. . .

. . . . .

(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees . . .

Local 610's failure to request arbitration with Sears in accordance with *John Wiley & Sons, supra*, was arguably a refusal to bargain collectively with an employer. Plaintiffs' claims that Local 610 abandoned them in favor of Local 688 are arguably an attempt to coerce. Accordingly the Court lacks jurisdiction over such claims.

The Court has concluded that while jurisdiction may conceivably exist over plaintiffs' claims that DAS and Sears were co-employers, the evidence presented failed to establish the existence of a co-employer status. The Court has further concluded that jurisdiction is lacking to determine the allegations of conspiracy. Although not argued by plaintiffs, the Court has considered the question of Sears' status as a successor employer. While finding that the facts established that Sears was a successor employer, the Court has concluded that Local 610's failure to assert the right to arbitration waived that right. The Court has further concluded that plaintiffs, as union members, can not compel this arbitration, a request which plaintiffs have not made herein, and that jurisdiction is lacking to determine whether plaintiffs have suffered any damages as a result of Local 610's failure to request arbitration. Accordingly, judgment will be entered for defendants.

**LLOYD A. FRY ROOFING COMPANY, Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al., Defendants.**

**No. 76 CV 230 W-4.**

United States District Court,
W. D. Missouri, W. D.

June 25, 1976.

Thos. J. Leittem, John H. Altergott, Jr., Shuggart, Thomson & Kilroy, Kansas City, Mo., for plaintiff.

Albert D. Hoppe, Asst. U. S. Atty., Kansas City, Mo., Henry F. Rompage, Environmental Protection Agency, Kansas City, Mo., Bruce J. Chasan, Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER DISMISSING CAUSE

ELMO B. HUNTER, District Judge.

This action for declaratory and injunctive relief was brought pursuant to provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Clean Air Act

of 1970, 42 U.S.C. § 1857 et seq. Plaintiff asserts jurisdiction under 28 U.S.C. § 1331(a) on the ground that this action involves a question of the constitutionality of the orders, actions, regulations, and applications of the Clean Air Act as applied and enforced by defendant and the amount in controversy exceeds the sum of $10,000 exclusive of costs. In addition, jurisdiction is asserted under 28 U.S.C. § 1337 on the ground that a substantial portion of asphalt roofing manufactured by plaintiff involves raw materials and final products which are distributed through channels of interstate commerce.

*The Parties*

Plaintiff, Lloyd A. Fry Roofing Company, is a corporation duly organized and existing under the laws of the State of Delaware and qualified to do business in various states of the United States, including the State of Missouri. Plaintiff is engaged in the manufacturing, sale, distribution and transportation of asphalt roofing products in various states of the United States. Plaintiff operates a plant in North Kansas City, Missouri, where it manufactures asphalt roofing by a process of dipping felt into hot asphalt. This process causes byproducts which are put through an air pollution control system including a water scrubber located at the base of the 100-feet-high, 4-feet-in-diameter stack. The emission from this stack is known as a "plume," and is the subject around which this action revolves.

Defendant United States Environmental Protection Agency (EPA) is an independent agency and unit of the Executive Branch of the United States government pursuant to Reorganization Plan 3 of 1970, effective December 2, 1970. Defendant agency was delegated the authority to establish procedures, methods and requirements to prevent discharge of certain air contaminants into the ambient air from any source of emission. Defendant agency further is authorized to enforce regulations issued by it and to assess and compromise civil penalties in connection with the enforcement of its regulations. Region VII of the Environmental Protection Agency (hereinafter referred to as "EPA") is comprised of the States of Missouri, Nebraska, Kansas and Iowa.

Defendant Russell Train is the presently appointed and acting Administrator of the defendant EPA. In his official capacity, defendant Train is charged with responsibility for the operation and activities of defendant EPA and with enforcing the regulations of defendant EPA under the Clean Air Act of 1970 as amended, 42 U.S.C. § 1857 et seq. Defendant Jerome Svore is the Administrator for Region VII of defendant EPA, responsible for administering the regulations of defendant EPA in Region VII under the Clean Air Act of 1970 as amended. Defendant Earl J. Stephenson is the Director of the Enforcement Division of Region VII of defendant EPA and is responsible for enforcing the regulations of defendant EPA in Region VII, under the Clean Air Act of 1970 as amended. Hereinafter, all defendants may be referred to jointly as "EPA".

*The Background*

Under 42 U.S.C. § 1857 et seq., defendants EPA and Train approved certain regulations known as "Air Quality Standards and Air Pollution Control Regulations for the Kansas City Metropolitan Area," which had been submitted by the State of Missouri as a part of the state's implementation plan under section 110(a) of the Clean Air Act, 42 U.S.C. § 1857c–5(a). The primary portion of these regulations for the Kansas City Metropolitan Area, Regulation V—Restriction of Emission of Visible Air Contaminants, provides in pertinent part as follows:

A. Restrictions Applicable to All Installations

No person may discharge into the ambient air from sources of emission whatsoever any air contaminant (a) of a shade or density equal to or darker than designated as No. 1 on the Ringelmann Chart, or (b) of such capacity as to obscure an observer's view to a degree equal to or greater than does smoke designated as No. 1 on the Ringelmann Chart.

B. Exceptions

2. . . . Where the presence of uncombined water is the only reason for failure of an emission to meet the requirements of Section A of this Regulation V, such sections shall not apply.

. . .

C. Method of Measurement

The Ringelmann Chart shall be the standard in grading the shade or opacity of visible air contaminant emissions. The Executive Secretary may with the consent of the source operator employ any other means of measurement which give comparable results of greater accuracy.

As a portion of a State Implementation Plan, Regulation V is enforceable pursuant to the provisions of the Clean Air Act. The Act provides that if a source is not in compliance with the provisions of an applicable State Implementation Plan, and if it does not have a variance approved by the State and the EPA, the Administrator issues a Notice of Violation. 42 U.S.C. § 1857c–8(a)(1). If the violation continues for more than thirty days, the Administrator may commence a civil action for injunctive relief pursuant to the Act, 42 U.S.C. § 1857c–8(b)(2), or he may issue an Order requiring the source to comply with the requirements of the Implementation Plan. Before such an Order may take effect, the source to whom it is issued must have had an opportunity to confer with the Administrator concerning the alleged violation. 42 U.S.C. § 1857c–8(a)(4).

On September 25, 1975, defendant Svore, as Regional Administrator of EPA, issued his Notice of Violation, informing plaintiff that it was found to be in violation of Regulation V and indicating that if the violation continued beyond 30 days from September 25, 1975, the Administrator could issue an order requiring compliance with the requirements of the implementation plan or commence a civil action for appropriate relief. The Notice of Violation further warned that 42 U.S.C. § 1857c–8 provides for criminal penalties in certain cases.[1] The notice did not mention the requirement that a formal due process hearing is necessary before an order can be issued.

Plaintiff requested an informal conference. Instead, a formal hearing was held on November 7, 1975, at defendant EPA's Region VII office in Kansas City, Missouri.[2] Subsequent to that hearing, EPA's January 9, 1976, letter to plaintiff, written under authority of 42 U.S.C. § 1857c–9, demanded installation, at plaintiff's expense, of scaffolding adjacent to and testing ports in plaintiff's 100-feet-high stack at approximately 50 feet in the air for purposes of an EPA stack test. Plaintiff twice refused to obligate itself for the expense of the scaffolding and test (estimated to be approximately $3500), but consented to allow EPA to conduct such tests at EPA's expense.

On March 9, 1976, defendant Stephenson, as Director of the Region VII Enforcement Division, issued his Order requiring plaintiff to complete certain specified milestones on or before the dates specified in said Order to achieve compliance with Missouri Regulation V, and ordering plaintiff to certify by letter to defendant Stephenson within ten days after each milestone whether the milestone had been met.

---

1. The Act provides:

(c)(1) Any person who knowingly—

(A) violates any requirement of an applicable implementation plan (i) during any period of Federally assumed enforcement, or (ii) more than 30 days after having been notified by the Administrator under subsection (a)(1) of this section that such person is violating such requirement, or

(B) violates or fails or refuses to comply with any order issued by the Administrator under subsection (a) of this section . . . shall be punished by a fine of not more than $25,000 per day of violation, or by imprisonment for not more than one year, or by both. If the conviction is for a violation committed after the first conviction of such person under this paragraph, punishment shall be by a fine of not more than $50,000 per day of violation, or by imprisonment for not more than two years, or by both. 42 U.S.C. § 1857c–8(c)(1).

2. The nature of this hearing is disputed by the parties. Because formal evidentiary rules were not invoked, defendants view the occasion as an informal conference, while plaintiff has styled it a "formal evidentiary hearing."

## The Complaint

On April 13, 1976, plaintiff filed this action. In its complaint, the plaintiff contends (1) that it has complied in all respects with Regulation V. The complaint further asserts (2) that defendants' Notice of Violation, Order, and other threatened action are the result of unauthorized decisions of defendants based upon unwritten interpretations and unpublished interpolations of defendants' internal guidelines and in addition to defendants' written regulations. Specifically, plaintiff points out that the requirements of Subpart A of Regulation V do not apply where the presence of "uncombined water" is the only reason for failure of an emission to meet the required standards. Since the regulations do not define the term "uncombined water," and since said term is not defined within the applicable statutes or within general definitions under Regulation I of the Kansas City Metropolitan Area Regulations, and as, according to plaintiff, this term does not have an ordinary meaning and usage among laymen, plaintiff contends that the regulations are unconstitutionally vague, ambiguous, indefinite, and conflicting.

Plaintiff further asserts, in essence, that Subpart C of Regulation V requires EPA to utilize any means of measurement which provide results of greater accuracy than those achieved under the Ringelmann Chart. According to plaintiff, the Ringelmann Chart, which is well-recognized as a test for measuring the opacity of a plume, by so-called smoke reading, is incapable of measuring the presence of "uncombined water" within the meaning of the exception provided in Regulation V–B and hence is unsatisfactory as a means of determining whether or not plaintiff is in violation of the regulation. Plaintiff therefore contends that (3) defendants' Order and Notice of Violation are not based upon substantial evidence and are void as arbitrary, capricious, not warranted by the facts and contrary to law.

Plaintiff further contends that its own wet-bulb and dry-bulb readings recorded at the bottom of the stack, above the scrubber, indicate a water-saturated mixture at that point, and asserts that scientific stack testing of the plume at a higher point will substantiate plaintiff's contentions that it is not in violation. Plaintiff also contends (4) that it will be deprived of due process of law if, by constructing scaffolding and performing stack testing at its own expense, it attempts to comply with the EPA Order without sufficiently clear EPA guidelines, or on the other hand, fails to comply with the EPA Order and subjects itself to civil and criminal sanctions including fines of up to $25,000 per day as well as prison sentences of up to one year. Plaintiff, therefore, challenges EPA's authority to require construction of scaffolding and stack testing at plaintiff's expense.

In summary plaintiff requests that this Court hold unlawful and set aside all EPA actions, findings and conclusions of law including EPA's Notice of Violation and Order as arbitrary, capricious, an abuse of discretion or otherwise in excess of authority or not in compliance with law; that the Court declare that the aforesaid regulations are unconstitutional in that they impose uncertain requirements on persons who are subject to comply therewith; and that the Court permanently enjoin defendants from applying to plaintiff unpublished and unwritten regulations or interpreting the published regulations by unpublished modifications or additions, from further proceeding with enforcement of the Notice of Violation and Order of defendant, from commencing a civil action under § 113(a)(1) of the Clean Air Act of 1970, from imposing criminal penalties against plaintiff, or otherwise from enforcing, relying upon, or requiring compliance with said Regulation V and its subdivisions and guidelines pursuant thereto until modifications and changes in such regulations have been made and published sufficiently in advance to give notice of reasonable standards of compliance.

## The Pending Motions

With its complaint, plaintiff has filed a Motion for Temporary Restraining Order

and Motion for Preliminary Injunction with suggestions in support thereof. In response, defendants have filed their Motion to Dismiss the Complaint, challenging this Court's jurisdiction over the subject matter of this action, stating that plaintiff has failed to state a claim upon which relief can be granted, and requesting judgment on the pleadings as to EPA's authority to require plaintiff to construct scaffolding and/or perform emissions testing at plaintiff's stack in North Kansas City, Missouri. The parties have filed extensive suggestions in support of and opposition to defendants' Motion to Dismiss, and the trial in this cause has been continued until the Court has ruled thereon. Thus the Court now proceeds to the very substantial and threshold question—crucial to the disposition of the cause—of whether or not jurisdiction is proper in this Court.

*The Jurisdictional Issue*

Defendants have moved, pursuant to Rule 12(b) and (c), Federal Rules of Civil Procedure, to dismiss the complaint insofar as it seeks pre-enforcement review of an EPA Order under authority of § 113(a)(1) of the Clean Air Act of 1970, § 1857c–8(a)(1). In addition, defendants move to dismiss the complaint insofar as it seeks judicial review of Regulation V, a federally-approved provision of the Missouri State Implementation Plan under authority of § 110 of the Clean Air Act, 42 U.S.C. § 1857c–5. In support of its contention that this Court lacks jurisdiction to grant the relief requested in the complaint, defendants allege Congressional intent to preclude pre-enforcement review of EPA abatement orders and assert that the Court of Appeals is the exclusive forum for judicial review of Regulation V.

The jurisdictional questions raised in defendants' motion involve matters of first impression for which no clear answer is readily available. The Clean Air Act and Amendments do not contain a specific provision prohibiting pre-enforcement review; neither is a specific method provided for granting such a review. See *Getty Oil Co.*

*v. Ruckelshaus,* 342 F.Supp. 1006 (D.Del. 1972), remanded 467 F.2d 349 (3 Cir.), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256. The question of pre-enforcement review of an abatement order or Notice of Violation under § 113(a)(1) of the Clean Air Act has not been reached in any previously-reported decision known to this Court. See, for example, *Getty Oil Co. v. Ruckelshaus, id.*; *West Penn Power Co. v. Train,* 522 F.2d 302 (3d Cir. 1975), cert. denied ——,U.S. ——, 96 S.Ct. 3165, —— L.Ed.2d ——, 44 U.S.L.W. 3736, 3738 (June 21, 1976); *United States Steel Corp. v. Fri,* 364 F.Supp. 1013 (N.D.Ind.1973). Therefore, in reaching this decision, this Court must travel an uncharted course.

■ ■ The Court is aware, of course, that agency action is subject to judicial review in civil or criminal proceedings for enforcement and that pre-enforcement review often is available. As plaintiff has pointed out, it is equally clear that agency action shall be set aside where such action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706, unless judicial review of such action is precluded by statute. 5 U.S.C. § 701(a)(1). The Administrative Procedure Act also makes reviewable final agency action for which there is no other adequate remedy in court, 5 U.S.C. § 704, and the Supreme Court has directed that these "generous review provisions" be given a "hospitable" interpretation. *Shaughnessy v. Pedreiro,* 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1954); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The courts should find preclusion of judicial review only upon a showing of "clear and convincing evidence" of Congressional intent to preclude such review. *Dunlop v. Bachowski,* 421 U.S. 560, 566–8, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Rusk v. Cort,* 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962).

■ With this strong presumption of reviewability in mind, however, this Court nevertheless must conclude that in this instance Congress did intend that pre-enforcement review in the District Court be

precluded. Despite the possible ambiguity which plaintiff asserts in defendant EPA's regulations, and despite the unpleasant alternative faced by plaintiff in the choice between complying with the Order, undergoing stack testing at its own expense or risking heavy fines and the possibility of imprisonment, this decision is based upon the best-available interpretation of the applicable statute and regulations and the most clearly-expressed and reasonable indication of Congressional intent.

■ First, and of great significance, plaintiff in this action requests *pre*-enforcement review of EPA's Notice of Violation and abatement order. In that context, it is especially significant that the Clean Air Act was enacted and amended for the purpose of protecting public health, and the national ambient air quality standards and Air Pollution Control Regulations for the Kansas City Metropolitan Area were promulgated and approved pursuant to §§ 109 and 110 of the Act, 42 U.S.C. §§ 1857c–4, 5; 40 C.F.R. Sec. 52.1323, 37 Fed.Reg. 10875 (May 31, 1972). See *Train v. N. R. D. C.,* 421 U.S. 60, 63–67, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975). Regulation V, challenged herein, is a restriction on emission of visible air contaminants, and although the standard measure under the Ringelmann Chart involves grading the shade or opacity of the visible plume, and does not specifically mention particulate matter, the relationship to public health is clear. Given the strong Congressional desire to protect the public health, it is entirely reasonable to conclude, as defendants contend, that pre-enforcement review was intentionally deleted from the Clean Air Act in order to provide speedy enforcement of air quality standards.

Legislative history supports such a conclusion. As it stands today, the Clean Air Act does not contain a provision for judicial review of abatement orders, but the Senate bill to amend the Act in 1970 did contain such a provision. See S. 4358, § 116(a)(5), 91st Cong., 2d Sess. (1970). Although the record admittedly is sketchy, the House-Senate Conference Committee specifically

deleted from § 113 that provision for judicial review before reporting out the bill's final version, and the deletion followed discussion in the Senate of the need for a simple, direct method of enforcement and the need for authority to issue an immediate cease-and-desist order to protect the public health. Testimony on S. 3466, Environmental Policy Division of the Congressional Research Service of the Library of Congress for the Committee on Public Works, United States Senate, 93d Cong., 2d Sess., A Legislative History of the Clean Air Act Amendments of 1970, 1005–1006 (Comm. Print 1974).

Although such a deletion is not conclusive evidence of Congressional intent to preclude review in every instance, see *Dunlop v. Bachowski,* 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), the deletion of such language by the Conference Committee with respect to the Clean Air Act of 1970 strongly militates against a judgment that Congress intended a result that it expressly declined to enact. See *Gulf Oil Corporation v. Copp Paving Co., Inc.,* 419 U.S. 186, 200, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974) (involving the Robinson-Patman Act). No rule of law forbids resort to legislative history in order to discern Congressional purpose, *Train v. Colorado Public Interest Research Group, Inc.,* —— U.S. ——, 96 S.Ct. 1938, 48 L.Ed.2d 434, 44 U.S.L.W. 4717, 4719 (1976); *United States v. American Trucking Associations,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Rusk v. Cort,* 369 U.S. at 379–80, 82 S.Ct. 787. Where, as here, legislative history is consistent with legislative purpose in providing speedy enforcement procedures, the combination appears to provide sufficient indication of Congressional intent to preclude judicial review of abatement orders.

Further consistent with this interpretation of Congressional intent is the fact that Congress specifically provided for review of state implementation plans in the Court of Appeals. Section 307(b) of the Act, 42 U.S.C. § 1857h–5(b), provides:

(1) . . . A petition for review of the Administrator's action in approving or

promulgating any implementation plan under section 110 . . . may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation, approval, or action, or after such date if such petition is based solely on grounds arising after such 30th day.

(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.

In cases similar to this one, the Courts of Appeals have held that they, and not the District Courts, have exclusive jurisdiction to review the Administrator's approval of a State Implementation Plan. *Getty Oil Co. v. Ruckelshaus,* 467 F.2d at 356; *Anaconda Company v. Ruckelshaus,* 482 F.2d 1301, 1304 (10th Cir. 1973). Indeed, in *South Terminal Corp. v. EPA,* 504 F.2d 646, 655 (1st Cir. 1974), a petition for review of the Administrator's action in promulgating an implementation plan under § 110 of the Clean Air Act, the First Circuit stated clearly its obligation to "determine whether EPA followed lawful procedures in evolving its plan; whether it acted within its statutory authority; and ·*whether the plan is constitutional*" (emphasis added). Thus, plaintiff's contention that the exclusive jurisdiction of the Court of Appeals is limited only to review of the Administrator's *action* in a *procedural* context is clearly without merit. Since plaintiff failed to challenge Regulation V in the Court of Appeals within thirty days of its promulgation, therefore, its claims herein were presented out of time and in the wrong forum. *Peabody Coal Co. v. Train,* 518 F.2d 940 (6th Cir. 1975); *Union Electric Co. v. EPA,* 515 F.2d 206, 211 (8th Cir. 1975), aff'd —— U.S. ——, 96 S.Ct. 2518, 49 L.Ed.2d ——, 44 U.S.L.W. 5060 (June 25, 1976).

Despite plaintiff's due process attack on this procedure, the Supreme Court has expressly approved the Congressional practice of restricting judicial review to a short time interval following agency action. *Yakus v.*

*United States,* 321 U.S. 414, 443–4, 64 S.Ct. 660, 88 L.Ed. 834 (1944). Plaintiff had adequate due process opportunity to attack the requirements of the regulation within the time afforded by the statute. See *United States Steel Corporation v. Fri,* 364 F.Supp. at 1021.

■ Plaintiff's failure to raise these claims properly within the time limit provided, however, does not entirely foreclose plaintiff from obtaining the relief it desires. The proper procedure is for plaintiff to assert its claims as a defense to any enforcement action which may be brought against it by defendant EPA. In *West Penn Power Co. v. Train,* 522 F.2d 302, 312 (3d Cir. 1975), for example, the Third Circuit stated:

The second route to relief is opened by 42 U.S.C. § 1857c–8(a)(4), Part II above. At the time West Penn brought this action, it had received only a notice of violation from Train. After receiving the notice, West Penn had the opportunity both for informally negotiating its differences with Train and for *presenting its cause to a federal district court, should EPA take formal steps to enforce the regulations allegedly violated by West Penn.* Thus West Penn has future relief available to it in both the state and federal courts. (Emphasis added.)

Similarly, in *United States Steel Corporation v. Fri,* 364 F.Supp. at 1021, the Court needed not decide whether preenforcement review of the finding of violation would be required because the plaintiff's claims were cognizable as a defense to the enforcement action brought by the Administrator while the plaintiff's suit was pending.

■ Plaintiff's claim that unconscionable penalties might accumulate if plaintiff is denied pre-enforcement review similarly is without merit. If, as plaintiff contends, the EPA order is invalid, then it will be invalidated during judicial review in an enforcement proceeding, thereby preventing accumulation of any penalties. Further, if an enforcement action were delayed for the purpose of accumulating large fines, plaintiff could invoke the equity jurisdiction of

the court to prevent injustice. Due process is afforded by the statutory provision for review in the Court of Appeals within thirty days of agency action and by the assertion of plaintiff's claims as a defense to any enforcement action. The Congressional balancing of the public's interest in the immediate benefits of clean air against the polluter's interest in deferring enforcement with litigation mandates this result, and an analogy to the Selective Service Act, 50 U.S.C. App. § 460(b)(3), reveals that it is not an unheard-of solution.[1]  See also *Federal Trade Comm'n v. Claire Furnace Co.*, 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927).

 Finally, plaintiff relies upon *United States v. Independent Stave Co.*, 406 F.Supp. 886 (W.D.Mo.1975), and *United States Steel Corp. v. Fri*, 364 F.Supp. 1013 (N.D.Ind.1973), in asserting that pre-enforcement review is available for failure of the Administrator to perform certain mandatory duties. Those alleged duties, set forth in 42 U.S.C. § 1857c–8(a)(4), are that (1) the order issued shall state with reasonable specificity the nature of the violation, (2) shall specify a time for compliance which the Administrator determines is reasonable; and (3) shall take into consideration the seriousness of the violation, and any good faith efforts to comply with applicable requirements. It is unnecessary for this Court to decide whether pre-enforcement review is indeed available for alleged failure to perform these duties, however, since the Order, attached to the complaint herein as plaintiff's Exhibit A, clearly sets forth the nature of the violation and includes timetables for compliance which the Administrator determined to be reasonable after a "thorough investigation of all relevant facts, including the seriousness of said violation and any good faith efforts to comply."

Thus, for the foregoing reasons, this Court has determined that it lacks jurisdiction to grant the relief requested in plaintiff's complaint. The decision herein has been reached with difficulty, in the absence of a clear course charted by Congress or previous interpretation, and with full awareness of the plaintiff's dilemma herein. Nevertheless, this result is consistent with due process and dictated by the best-available evidence as to Congressional intent.

Therefore, it is ordered and adjudged that defendants' Motion to Dismiss is hereby granted.

---

1. Under the Selective Service Act, a registrant is barred by statute from contesting his classification by the local board, the appeal board or the President, in a civil action for judicial review. Rather, he must refuse induction and stand prosecution by the United States Attorney, raising his challenge as a defense to the enforcement action. Due process is thereby satisfied and dilatory civil actions are precluded.