UNITED STATES of America, Plaintiff,

v.

The CONTINENTAL GROUP, U.S.A., d/b/a Continental Can Company, U.S.A., Defendant.

Civ. A. No. 84–C–886.

United States District Court, E.D. Wisconsin.

Oct. 17, 1984.

Allen W. Williams, Jr., Mark A. Thimke, Attys. at Law, Milwaukee, Wis., for defendant.

F. Henry Habicht, II, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., Mary Ellen Leahy, Environmental Enforcement Section, Land & Natural Resources Div., Dept. of Justice, Washington, D.C., Anne Swofford, U.S. Environmental Protection Agency, Chicago, Ill., for plaintiff.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a civil action under § 113(b) of the Clean Air Act ("the Act"), 42 U.S.C.

§ 7413(b). Federal jurisdiction derives from 28 U.S.C. § 1345 and 42 U.S.C. § 7413. Presently before the Court is the defendant Continental Can Company's ("Continental's") motion for a stay of proceedings. The motion will be denied.

Continental operates a food and beverage can manufacturing plant in Glendale, Wisconsin. In the process, coatings, varnishes and end seam compounds are applied to the metal used in the manufacture of the cans, to ensure that the cans are properly sealed and that the contents of the finished can do not come in contact with the metal. For ease of application, these coatings, varnishes and end seam compounds are dissolved in a blend of liquids that later evaporates into the atmosphere and generates emissions of volatile organic hydrocarbons ("VOCs"). The interaction of VOCs and oxides of nitrogen following exposure to strong sunlight creates ozone.

■ Congress passed the Clean Air Act Amendments to enhance local efforts to abate air pollution. The legislation creates a strong federal enforcement presence, reflecting federal concern that progress towards meeting abatement goals not be delayed. *See* H.R.Rep. No. 294, 95th Cong., 1st Sess. 2, 53–57, *reprinted in* 1977 U.S. Code Cong. & Ad.News 1077, 1079–80, 1131–36. Under the Act, as amended, state agencies are to develop State Implementation Plans ("SIPs"), which include emission limits, schedules and timetables for these limits, and other provisions calculated to ensure the timely attainment and maintenance of the national ambiant air quality standards set by the Environmental Protection Agency ("the EPA"). The SIPs are submitted for EPA approval. 42 U.S.C. § 7410(a). The EPA retains power independently to promulgate a SIP if a state fails to do so or does not submit one that is adequate. 42 U.S.C. § 7410(c). States may revise their SIPs, but only after EPA approval is sought and obtained. 42 U.S.C. § 7410(a)(3). Once a SIP is in effect, its terms can be enforced by the federal government or the states. 42 U.S.C. §§ 7413(b), 7416.

Administration of Wisconsin's approved SIP was undertaken by the Wisconsin Department of Natural Resources ("the DNR"). In 1979, the DNR adopted rules regulating the emission of VOCs from the can manufacturing process. Wis.Admin. Code § 154.13(4)(c)1.–2. [NR] 633 (1983). The DNR also has adopted a regulation whereby a manufacturer may submit an alternate compliance plan in the event that federal regulatory approval procedure delays compliance with the SIP's emission limits. Wis.Admin.Code § 154.13(12)(e)2. [NR] 646–10 (1984).

Continental responded to the DNR's regulatory efforts by submitting on August 27, 1979, an alternate compliance plan request. Continental therein stated its intention to develop new coatings and end seam compounds with a low VOC content. Because these compounds come in contact with the contents of the cans, they require the Food and Drug Administration's ("the FDA's") approval. Continental stated its intention to achieve final compliance with the DNR regulations by December 31, 1985. The DNR has not made a formal decision on Continental's request.

From the time it made its request for an alternative compliance plan, Continental has devoted approximately 50,000 man-hours to development of new low-VOC coatings and end seam compounds. However, Continental asserts that it will not be able to comply with the DNR's final emission limits before the end of 1985, due in part to testing by the FDA and by Continental's customers.

On October 28, 1983, the EPA issued a Notice of Violation to Continental pursuant to 42 U.S.C. § 7413(a), for generating VOC emissions in excess of the limits permitted under DNR regulations governing can coatings and end seam compounds. The present action was filed on June 29, 1984.

In support of its motion for a stay, Continental seeks to portray itself as snared in the tangled web of state-federal relations created by the Act. Continental emphasizes that the State of Wisconsin has not joined in the action, and argues that the

DNR should be given the opportunity to review and rule upon Continental's request before the federal government intervenes. Continental also states that it has substantially complied with the DNR's interim emission limits promulgated in August, 1983. It professes disbelief and bemusement with respect to the government's contentions that the DNR's regulatory efforts have been lax and federal intervention is necessary.

 First, the mere fact that Continental has submitted an alternative compliance plan request to the DNR does not provide a basis for abstention. *Burford v. Sun Oil Co.*, 319 U.S. 315, 345, 63 S.Ct. 1098, 1112, 87 L.Ed. 1424 (1943), upon which Continental relies, is inapposite. The doctrine of abstention announced in that case contemplates wholesale abdication of federal jurisdiction, not merely the postponement of its exercise. *Burford*-type abstention is appropriate in circumstances where the federal judiciary's intervention in a particular area would impermissibly disrupt state efforts to establish a coherent policy with respect to a matter of public concern. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–815, 96 S.Ct. 1236, 1244–1245, 47 L.Ed.2d 483 (1976). Yet the legislative scheme under which the present action was brought expressly provides that the federal government may enforce a state's plan in federal court, a valid, approved SIP having the force and effect of federal law. *See Union Electric Co. v. Environmental Protection Agency*, 515 F.2d 206, 211 (8th Cir.1975), *aff'd*, 427 U.S. 246, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976). It would be anomolous to hold that *Burford* requires me to refrain from exercising jurisdiction in view of such an explicit Congressional directive.

Second, the facts alleged in the pleadings and set forth in the parties' briefs on the present motion persuade me that this case presents precisely the sort of situation Congress contemplated when it provided for federal enforcement in the federal courts. Continental requested an alternative compliance plan, and five years have passed with no ruling on the request from the DNR. To stay this action pending completion of administrative proceedings, assuming any such proceedings are taking place at all, would make a mockery of Congress's efforts to correct the problem of the states' delay in carrying out pollution control responsibilities.

Whether Continental is presently in substantial compliance with the DNR's interim emission limits is not relevant because the EPA has not approved these regulations. Additionally, whether the DNR has a reputation for strictly enforcing Wisconsin laws is of no pertinence here, where it is undisputed that the DNR has not ruled on Continental's request for five years. In the absence of compelling circumstances, I am under a duty scrupulously to exercise the jurisdiction conferred by Congress.

THEREFORE, IT IS ORDERED that Continental Can Company's motion for a stay of proceedings is hereby denied.