**UNITED STATES of America (EPA), Plaintiff,**

v.

**AM GENERAL CORPORATION, Defendant.**

**No. S87–377.**

United States District Court, N.D. Indiana, South Bend Division.

Dec. 9, 1992.

Michael Rowe, J. Steven Rogers, F. Henry Habicht, II, Maureen Katz, Land and Natural Resources Div., Dept. of Justice, Andrew Baker, Ass't U.S. Atty., Erica Rosenberg, Office of General Counsel, U.S.E.P.A., Franklin Bentkover, Washington, DC, Arthur Smith, Andre Daugavietis, Office of Regional Counsel, U.S.E.P.A., Chicago, IL, for plaintiff.

Bryan G. Tabler, Joyce Martin, Indianapolis, IN, Charles V. Sweeney, Jean L. Doyle, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Briefly stated, this case involves the EPA's challenge to AM General's modifications of its Mishawaka, Indiana plant in February 1986. AM General made those modifications pursuant to a permit issued by the St. Joseph County Health Department to which the EPA and the State of Indiana have delegated the authority to issue such permits. The EPA contends that the permit should not have been issued because AM General provided too little information as to whether the modifications would result in violation of applicable air quality control standards. For the reasons that follow, the court concludes that AM General is entitled to judgment on the EPA's claim because AM General made the modifications after the County Health Department had issued a permit for the modifications but before the EPA took formal action finding the permit to be in violation of Indiana's pollution standards. The court also concludes that the 1990 amendments

to the Clean Air Act render moot AM General's requests that the court order the EPA to decide the requests that St. Joseph County be redesignated as an "attainment area" for purposes of the Clean Air Act.

The case is before the court on four motions for dispositive relief and one motion to compel discovery. Defendant AM General Corporation ("AM General") has filed two motions for summary judgment and a motion to reconsider this court's September 21, 1990 order denying AM General's prior summary judgment motion. AM General also has filed a motion to compel discovery pursuant to Fed.R.Civ.P. 37. AM General's dispositive motions address both the allegations of the plaintiff's complaint and those in the defendant's counterclaim. AM General's motion to compel seeks discovery of information it contends is relevant to the defense of the government's claim against it. The plaintiff, the United States Environmental Protection Agency ("EPA"), has moved for judgment on the pleadings with respect to AM General's counterclaim.

## I. BACKGROUND

This action concerns AM General's alleged violations of emission standards promulgated under the Clean Air Act, 42 U.S.C. § 7401 *et seq.* Some background of that legislation is necessary before discussing the case's factual history.

### A. The Clean Air Act

In 1970, Congress amended the Clean Air Act of 1963, substantially increasing the federal role in controlling air pollution. *Union Electric Co. v. EPA,* 427 U.S. 246, 257, 96 S.Ct. 2518, 2525, 49 L.Ed.2d 474 (1976); *Train v. Natural Resources Defense Council,* 421 U.S. 60, 64, 95 S.Ct. 1470, 1474, 43 L.Ed.2d 731 (1975). Congress also made substantial changes to the Act in 1977, reasserting the federal government's final responsibility for achieving the statute's goals. *Ohio Environmental Council v. EPA,* 593 F.2d 24, 31 (6th Cir. 1979). Congress adopted the most recent amendments to the Clean Air Act in November 1990. Because the parties have consistently referred to the pre–1990 version of the Clean Air Act, the court, when referring to the Act in the discussion below, addresses the pre–1990 version unless otherwise indicated. Where the 1990 amendments effect the court's analysis, the court so indicates.

The Clean Air Act enacts a federal program for pollution control to be administered by the states in accordance with adopted goals for air quality. Under the scheme, local authorities are required to establish state implementation plans ("SIPs") aimed at achieving National Ambient Air Quality Standards ("NAAQS") and emission controls required by the Clean Air Act. *See generally Council of Commuter Organizations v. Gorsuch,* 683 F.2d 648, 651 (2nd Cir.1982); *United States v. Continental Group, U.S.A.,* 595 F.Supp. 1021 (E.D.Wis.1984). SIPs are adopted in accordance with those procedures and time-tables established in § 110(a) of the Act, 42 U.S.C. § 7410(a). That section provides in pertinent part:

> (a)(1) Each state shall, after reasonable notice and public hearings, adopt and submit to the Administrator, within 3 years (or such shorter period as the Administrator may prescribe) after the promulgation of a national primary ambient air quality standard (or any revision thereof) ... for any pollutant, a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region (or portion thereof) within each State. In addition, such State shall adopt and submit to the Administrator (either as a part of a plan submitted under the preceding sentence or separately) within 3 years (or such shorter period as the Administrator may prescribe) after the promulgation of a national ambient air quality secondary standard (or revision thereof), a plan which provides for implementation, maintenance, and enforcement of such secondary standard in each air quality control region (or portion thereof) within each State. Unless a separate public hearing is provided, each State shall consider its plan implementing such secondary standard at the hear-

ing required by the first sentence of this paragraph.

\* \* \* \* \* \*

(k)(2) Within 12 months of a determination by the Administrator ... that a State has submitted a plan or plan revision (or, in the Administrator's discretion, part thereof) that meets the minimum criteria established, the Administrator shall act on the submission....

42 U.S.C. § 7410.

As part of the goal of improving air quality through SIPs, states and localities receive a designation under the Act according to whether they have met the NAAQS for particular air pollutants or emissions. Three types of designations are possible:

(i) nonattainment, any area that does not meet (or contributes to ambient air quality in a nearby area that does not meet) the national primary or secondary ambient air quality standard for the pollutant,

(ii) attainment, any area (other than an area identified in clause (i)) that meets the national primary or secondary ambient air quality standard for the pollutant, or

(iii) unclassifiable, any area that cannot be classified on the basis of available information as meeting or not meeting the national primary or secondary ambient air quality standard for the pollutant.

42 U.S.C. § 7407(d)(1). If federal or state authorities determine that an area should be redesignated because of a change in the level of pollutants, a change in designation may be sought through procedures outlined in 42 U.S.C. § 7407(d)(3)(D):

The Governor of any State may, on the Governor's own motion, submit to the Administrator a revised designation of any area or portion thereof within the State. Within 18 months of receipt of a complete State redesignation submittal, the Administrator shall approve or deny such redesignation. The submission of a redesignation by a Governor shall not affect the effectiveness or enforceability

of the applicable implementation plan for the State.

SIPs must include specific requirements for issuing permits to individuals who intend to modify or construct major pollution sources located in nonattainment areas. Under the Act, a state's SIP must provide that a permit to construct or operate in these nonattainment areas may be issued only if the permitting agency determines that (1) the increase in emissions will be offset by emission reduction from other sources; (2) all other sources of the operator in the state are in compliance with the Act; and (3) the source is required to comply with the lowest achievable emission rate. 42 U.S.C. §§ 7502–7503.

In 1978, the EPA designated St. Joseph County, Indiana as a nonattainment area. In 1981, Indiana submitted a revised SIP to the EPA, designed to achieve the national standards for ozone. The EPA approved the SIP revisions on February 16, 1982. Pursuant to the revised SIP, persons in a nonattainment area seeking to modify a facility so as to result in the potential increase of emissions must demonstrate that devices or techniques used by such facility achieve the lowest achievable emission rate ("LAER"). 42 U.S.C. § 7502.

The EPA has given the State of Indiana the authority to issue permits required under the Act. The state has delegated its permitting authority to the St. Joseph County Health Department for the county ("County Health Department"). 40 C.F.R. § 52.770 *et seq.* Indiana's SIP—APC–19, codified at 326 Indiana Administrative Code 2–1–1 *et seq.*—sets out the substantive and procedural requirements for obtaining permits in a nonattainment area such as St. Joseph County as required under 42 U.S.C. §§ 7502–7503 of the Act. APC–19 § 4 prohibits the construction, modification, or reconstruction of any facility, unless it can be demonstrated to the Board that the facility will meet the requirements set forth in the Act's nonattainment provisions, 42 U.S.C. §§ 7502–7503. APC–19 § 4(b)(4) provides in relevant part that, "Any person proposing the construction, modification or reconstruction of a major facility which will im-

pact on the air quality of a nonattainment area or which will be located in a nonattainment area shall comply with the requirements of Section 8...." Section 8(a)(3) of APC–19 provides that:

(a) No person proposing the construction, modification or reconstruction of a major facility in a nonattainment area ... shall receive a construction or operation permit unless the applicant demonstrates that:

....

(3) the applicant will apply emission devices or techniques to the proposed, construction, modification or reconstruction such that the lowest achievable emission rate for the applicable pollutant will be achieved.

The County Health Department issues permits and monitors compliance with those permits and Indiana's SIP in accordance with the Act and in conjunction with EPA officials. The County Health Department's enforcement system provides parties with an administrative appeal of the County Health Department's findings and decisions through the Pollution Appeals Board.

■ In addition to its role of establishing NAAQS and overseeing the states' implementation of their respective SIPs, the EPA itself plays a role in both implementing and enforcing SIPs. *See Wisconsin Environmental Decade, Inc. v. Wisconsin Power & Light Co.*, 395 F.Supp. 313 (W.D.Wis.1975). The Act provides for extensive enforcement by federal authorities in 42 U.S.C. § 7413. Once a SIP is in effect, its terms can be enforced either by the federal government or the states. *United States v. Ford Motor Co.*, 736 F.Supp. 1539, 1550 (W.D.Mo.1990). The federal government may enforce a state's plan in federal court; a valid, approved SIP has the force and effect of federal law. *Union Electric Co. v. EPA*, 515 F.2d 206, 211 (8th Cir.1975), *aff'd*, 427 U.S. 246, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976).

Section 113 provides the authority for federal enforcement of approved SIPs by civil actions brought in federal district court. *See United States v. Ford Motor*

*Co.*, 736 F.Supp. 1539. Under § 113(a)(1), whenever the EPA finds a person in violation of an applicable implementation plan or permit, the EPA, not less than thirty days after notifying the State and the person of the finding, may issue an order requiring the person to comply with the plan or permit, issue an administrative penalty order, or bring a civil action. 42 U.S.C. § 7413(a)(1). When the EPA finds that a state is not acting in compliance with certain SIP provisions required under the Act, the EPA may issue an order prohibiting the construction or modification of any source in the relevant area, or may institute a civil action for injunctive relief and civil penalties against any owner or operator who attempts to modify or construct a source after the EPA has found the state to be in violation of the Act. 42 U.S.C. § 7413(a)(5).

### B. Statement of the Case

AM General began producing a military vehicle known as the "Hummer" or "Hum-Vee" for the United States Armed Forces at its Mishawaka facility in St. Joseph County, Indiana in 1983. The "Hummer" was designed to replace the ubiquitous Jeep as the military's general utility vehicle, and saw widespread use in Operation Desert Storm. As part of this production, AM General modified its painting facilities to include spray booths and drying ovens, resulting in the emission of volatile organic compounds ("VOC"). The VOC emission levels were not high enough to subject AM General to requirements of Indiana's revised SIP when production of the vehicles first began, but the VOC emission levels were expected to increase at some future time.

On February 23, 1984, the County Health Department issued a construction permit to AM General's Mishawaka plant. The pollutant emissions covered by this permit, known as a Phase I permit, did not surpass regulatory limitations applicable to ozone nonattainment areas, such as St. Joseph County. At the time the Phase I permit was issued, the EPA and AM General had discussed the company's future need for a Phase II permit to cover emissions reach-

ing certain regulated levels for ozone, if production at the Mishawaka plant increased.

On February 8, 1985, the State of Indiana submitted a request to the EPA to redesignate St. Joseph and Elkhart Counties as ozone attainment areas, pursuant to § 107(d) of the Clean Air Act, 42 U.S.C. § 7407(d). The EPA has proceeded with the process of review over this request for redesignation, but, as of the last date of the parties' submissions to this court, has not yet issued a final decision.

In August 1985, AM General applied to the County Health Department for a Phase II construction permit. Before submitting its Phase II application, AM General had discussions with EPA representatives concerning what emission controls would constitute LAER for the Mishawaka plant. AM General contends that the LAER demonstration in its application was consistent with its earlier discussions with the EPA. The EPA contends that it never suggested that AM General's proposed LAER for the Mishawaka plant during those discussions met with the agency's approval.

On October 8, 1985, the County Health Department submitted AM General's permit application, along with draft permits, to EPA, Region V, for review and recommendation. In its review dated November 21, 1985, Region V recommended that St. Joseph County disapprove the permit application because the proposed permits failed to specify any method for determining compliance with applicable emissions limitations. In a letter dated January 16, 1986, EPA's Steve Rothblatt further advised the County Health Department's Pollution Control Officer, Paul Trost, that any federally valid new source permit issued to a source in a nonattainment area in Indiana must conform to the requirements (e.g. LAER, offsets, common ownership compliance) of Indiana Rule APC–19.

On February 6, 1986, despite Region V's reservations regarding AM General's permit application, the County Health Department issued a Phase II construction permit to AM General's Mishawaka facility allowing an increase in VOC emissions. The County Health Department informed the EPA of its intent to issue the permit on February 1, 1986. AM General subsequently modified its facility on February 11, 1986 in accordance with the Phase II permit.

On June 19, 1986, the EPA issued a Notice of Violation ("NOV") to AM General charging that AM General had been operating its plant in violation of APC–19 because the permit issued to AM General failed to require AM General to apply emission limitation devices or techniques required to achieve LAER, and failed to require that the increase in VOC emissions be offset by a reduction in VOC emissions from existing facilities. At the same time, the EPA issued a Finding of Violation ("FOV") to the State of Indiana, the County Health Department, and AM General which alleged that the County Health Department failed to comply with APC–19 in issuing AM General's permit. The EPA sought no review of the County Health Department's approval of the Phase II permit by the Pollutions Appeal Board before issuing the NOV. On May 19, 1987, the EPA sent AM General its determination of LAER for the Mishawaka facility.

### C. Procedural Posture

The EPA commenced this civil action on July 27, 1987, invoking the court's jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 7413.

The EPA alleges that AM General is in violation of the Indiana SIP and seeks an injunction of the AM General's activities in violation of the federally enforced state regulations. 42 U.S.C. §§ 7410, 7413. The EPA issued the following "Finding of Violation" as a prerequisite to the action:

> For the reasons set forth below, the Administrator finds that the permit to operate, issued by the St. Joseph County Health Department on February 6, 1986, to AM General Corporation (AMG) failed to comply with the requirements of Indiana Air Pollution Regulation APC–19 Section 4 and 8 that the St. Joseph County Health Department, as duly authorized delegate of the State of Indiana, did

not act in compliance with those requirements.

The permit to operate issued by St. Joseph County Health Department on February 6, 1986, to AM General Corporation increased the Volatile Organic Compounds (VOC) emissions from 197.3 tons per year to 377.0 tons per year. This VOC emission increase of 179.7 tons per year allowed to AMG, subjects the facility to Regulation APC–19.

Regulation APC–19 Section 4b(4) requires any person proposing the construction, modification or reconstruction of a major facility which will impact on the air quality of a nonattainment area, shall comply with the requirement of Section 8 of this regulation, as applicable.

Regulation APC–19 Section 8 requires the same person to demonstrate along with other requirements:

> (1) Increased emissions of the pollutant are to be offset and are equal to 90 percent or less of the offsetting emissions.

> (2) Application of emissions limitation devices or techniques such that the Lowest Achievable Emission Rate (LAER) for the pollutant will be achieved.

As both an affirmative defense and counterclaim to the complaint, AM General alleges that the EPA is barred from bringing Clean Air Act enforcement proceedings against it because the EPA failed to comply with its mandatory duty to consider the State's request for revisions in the emission standards that would have permitted pollutant levels emitted by the AM General plant. 42 U.S.C. § 7407(d).

In Count I of its counterclaim, AM General also seeks declaratory and injunctive relief in the form of an order compelling the EPA to perform its mandatory duty to consider and promulgate Indiana's redesignation of St. Joseph County, pursuant to § 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2), which generally grants the authority for a person to commence a civil action against the EPA on his own behalf "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."

Count II of AM General's counterclaim seeks an order finding that the EPA has failed to act within a reasonable time on the proposed redesignation and compelling the EPA to commence action on that proposal in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706. Count III of the counterclaim alleges that the EPA has engaged in a "systematic pattern, practice and policy of delaying administrative action on Indiana's redesignation requests" and seeks an order compelling the EPA to approve that redesignation proposal within sixty days.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

■■■ A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Duane v. Lane*, 959 F.2d 673, 675 (7th Cir.1992). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 320 (7th Cir.1990). Summary judgment should be granted if no reasonable trier of fact could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991).

■■■ The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allega-

tions in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir. 1992). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Prince v. Zazove,* 959 F.2d 1395, 1398 (7th Cir.1992), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Kizer v. Children's Learning Center,* 962 F.2d 608, 611 (7th Cir.1992).

## III. AM GENERAL'S MOTIONS FOR SUMMARY JUDGMENT

AM General has filed two motions for summary judgment in this cause. While many of the arguments in the motions overlap, AM General appears to assert two general claims for relief. First, AM General contends that the EPA, as a matter of law, has no valid claim against it under the Clean Air Act because the EPA cannot challenge a local environmental authority's decision to issue an emission permit, which is what the EPA seeks to accomplish in this action. Second, AM General asserts that this court lacks subject matter jurisdiction over the cause, primarily because the EPA has failed to exhaust administrative remedies available to it before coming to court. The court addresses the jurisdictional arguments first.

### A. Jurisdictional Issues

AM General claims that the EPA lacks jurisdiction to bring this action in federal court for several reasons. First, it maintains that the County Health Department is vested with jurisdiction to review local agencies' permitting decisions under the Clean Air Act and that agency's administrative procedures for appeal of its decision to issue the Phase II permit through the Pollution Appeals Board. Second, AM

General contends that the issuance of a valid NOV is a jurisdictional prerequisite to a Section 113 action and the June 19, 1986 Notice was invalid because it was (a) based on insufficient evidence, (b) not the result of proper procedures of appeal of a permit through local authorities, and (c) not issued in accordance with the Administrative Procedure Act requirements for "revoking, suspending, or annulling a license." 5 U.S.C. §§ 551(10), 558.

■ 1. AM General offers no persuasive authority in favor of its conclusion that a federal agency is barred from enforcing a statute (over which Congress has given it clear enforcement authority) when it has failed to exhaust parallel state or administrative remedies. Section 113 of the Clean Air Act gives the EPA broad enforcement powers in any instance in which an emissions source has violated the Act or a SIP. 42 U.S.C. § 7413. Indeed, one of those cases cited in AM General's voluminous materials supports the EPA's right to invoke 42 U.S.C. § 7413 as the proper basis for jurisdiction in this cause.

In *Chrysler Corporation v. United States Environmental Protection Agency,* Nos. IP 77–371–C and IP 79–172–C, slip op. at 19 (S.D.Ind. Dec. 5, 1979), the court noted the EPA's ability to proceed with enforcement under 42 U.S.C. § 7413(a)(1) upon learning that a particular source had violated a SIP. The *Chrysler Corporation* court further noted that § 7413(a)(2) provides the EPA with an additional means for enforcement of the Clean Air Act in the event of the state's failure to maintain air quality standards. Slip op. at 19.

*Chrysler Corporation* presented a scenario analogous to the one before this court. The state authority had approved the source's exemption from certain emission requirements. The district court found that since the SIP did not provide such an exemption, the EPA could proceed to enforce the source's noncompliance with that plan and the Act. Slip op. at 18. Here, the EPA contends that AM General has violated the terms of Indiana's SIP. Sections 113(a)(1) and 113(b) authorize the EPA to bring a civil action against any

person found by the EPA to be in violation of an SIP, thirty days after the EPA has given the person notice of its FOV. As such, the EPA has stated a claim within the court's jurisdiction. Accordingly, the court finds no merit in the contention that the EPA should have first appealed the County Health Department's approval of the permit through the Pollution Appeal Board or exhausted other administrative remedies.

■ 2. The only jurisdictional prerequisites to suit under § 113(a) is that the EPA must provide the defendant with a NOV thirty days before filing suit against a source under § 113(a)(1), or else issue a FOV to the state when it wishes to institute enforcement proceedings against a source under § 113(a)(5). AM General asserts that the NOV issued by the EPA in this case was invalid and, therefore, does not support jurisdiction under § 113(b).[1]

■ Section 113 clearly requires that the EPA must serve AM General with a NOV before it may proceed with judicial enforcement proceedings. § 113(a)(1). The requirement is jurisdictional; the EPA is empowered to bring such a civil suit only on the basis of the specific violation alleged in the NOV and only where that specific violation alleged in the NOV continued for thirty days. *United States v. Louisiana–Pacific Corp.*, 682 F.Supp. 1141, 1155 (D.Colo.1988). Courts generally view the sufficiency of a NOV liberally. *United States v. Ford Motor Company*, 736 F.Supp. 1539, 1550 (W.D.Mo.1990).

AM General contends that the NOV issued in this case was invalid because it rests upon no evidence or lawful determination whatsoever. AM General contends that the NOV was arbitrary and capricious because no tribunal has ruled on the validity of AM General's permit.

■ AM General misapprehends the purpose of a NOV issued by the EPA pursuant to § 113. A NOV issued under § 113(a)(1) is not subject to pre-enforcement review because the agency action does not inexorably lead to an enforcement action; it only triggers the statutory mechanism for informal accommodation which precedes any formal enforcement measures. *Solar Turbines v. Seif*, 879 F.2d 1073, 1077 (3rd Cir.1989); *West Penn Power Company v. Train*, 522 F.2d 302, 311 (3rd Cir.1975); *Union Electric Co. v. EPA*, 593 F.2d 299 (8th Cir.), *cert. denied*, 444 U.S. 839, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979). "The statutory scheme contemplates that the violation notice itself has neither an independent coercive effect nor 'the force of law.'" *West Penn Power Co. v. Train*, 522 F.2d at 311. The only effect of a NOV is to make the recipient aware that the "definitive" regulations are not being met, and to trigger the statutory mechanism for informal settlement negotiations before further action is taken. Hence, the NOV itself does not effect a permit's validity; it simply announces the EPA's intent to challenge the validity of the permit through an enforcement action under § 113.

Courts generally have held that the EPA's decision to issue a NOV is unreviewable under the Administrative Procedure Act. *See West Penn Power Co. v. Train*, 522 F.2d 302; *Lloyd A. Fry Roofing Co. v. United States*, 554 F.2d 885 (8th Cir.1977). Issuance of a NOV is not a "final" agency action since it may or may not be followed by a compliance order or a civil action. AM General's challenge to the validity of the NOV is more properly postured as a defense to the case's substantive issues and not as a jurisdictional point. Several of the cases to which AM General refers point out that a party must challenge a NOV under the Clean Air Act as a defense to a civil action and not as a claim for pre-enforcement review through administrative channels. *West Penn Power Co. v. Train*, 522 F.2d at 312; *Lloyd A. Fry Roofing Co. v. United States E.P.A.*, 415 F.Supp. 799 (W.D.Mo.1976), *aff'd*, 554 F.2d 885 (8th Cir. 1985); *United States v. Independent Stave*

---

1. Alternatively, to the extent that the EPA has announced its intention to proceed against AM General pursuant to subsection (a)(5) of § 113, rather than subsection (a)(1), *see* footnote 2 *supra*, AM General's jurisdictional challenge to the EPA should be denied as moot. As pointed out by the EPA, the jurisdictional prerequisite to a civil suit under subsection (a)(5) is the issuance of a Finding of Violation against the state, as opposed to a Notice of Violation.

*Co.,* 406 F.Supp. 886 (W.D.Mo.1975); *United States Steel Corp. v. Fri,* 364 F.Supp. 1013 (N.D.Ind.1973).

The June 19, 1985 NOV charged that AM General's Mishawaka facility was in violation of APC–19 in that the permit issued to it by the County Health Department failed to require AM General to apply emission limitation devices which achieved LAER, and did not require that the increase in VOC emissions be offset by a reduction in VOC emissions by existing facilities. The complaint filed in this court more than thirty days after the NOV was issued charged that AM General had continued to operate its facility without a valid permit in violation of APC–19 section 8. Accordingly, the EPA has satisfied the jurisdictional prerequisites of § 113(a)(1).

AM General's contention that the NOV's allegations are not supported by an adequate factual basis is not a jurisdictional argument. It is an argument as to the merits of the EPA's claim. Accordingly, the court finds it has jurisdiction over the EPA's claim, and now turns to AM General's challenge to the merits of the EPA's claim.

### B. Clean Air Act Issues

■ AM General contends that the EPA's action amounts to an improper attempt to revoke the permit issued by the County Health Department. AM General asserts that it modified its plant pursuant to a valid permit issued in accordance with Indiana's SIP, and that § 113 of the Act, 42 U.S.C. § 7413, provides the EPA with no authority to veto a state-issued permit. AM General contends that it fulfilled all of its legal obligations under the permitting procedures promulgated by the County Health Department, and it should not now be subject to another governmental agency's oversight.

The EPA contends that its authority to veto state-issued permits, and to hold source operators liable for operating without valid permits, can be found in the enforcement provisions of § 113 of the Clean Air Act. Because the EPA relies on § 113, the court looks to that section to see whether the EPA has stated a claim against AM General under the Clean Air Act.

In its complaint, the EPA asserts an enforcement claim under § 113(a)(1) and § 113(b). Under § 113(a)(1), whenever the EPA finds a violation of a state implementation plan, it must notify the person in violation of the plan and the state in which the plan applies of the alleged violation. If the violation continues for thirty days after the date of the notification, the EPA may issue an order requiring compliance with the plan or bring a civil enforcement action for civil penalties and injunctive relief.

AM General argues that under the reasoning of *United States v. Solar Turbines, Inc.,* 732 F.Supp. 535 (M.D.Pa.1989), the EPA may not use § 113(b) to veto a state-issued permit. In *Solar Turbines,* the court held that the EPA could use neither the administrative enforcement provisions of § 167 nor the civil suit provisions of § 113(b) to challenge the validity of a permit issued by the state pursuant to the Prevention of Significant Deterioration permitting requirements applicable to new sources built in attainment areas. The court rejected the EPA's argument that it is a violation for an owner/operator of a source to act on a permit issued by the state. The court held that absent specific veto authority over state-issued permits, it was unreasonable for the EPA to take the position that a source can be held directly liable for a decision that was not in its control to make. Because the EPA's quarrel was with the permit issued by the state, the court found that the EPA should have instituted enforcement actions against the state, not against the source which relied on the state-issued permit. *See United States v. Solar Turbines,* 732 F.Supp. at 540.

The EPA contends that this case is different because unlike the permit holder in *Solar Turbines,* AM General's Mishawaka facility is subject to the Act's nonattainment provisions, and the pre–1990 version of § 113 specifically authorized enforcement actions against a source located in a nonattainment area when the state failed to comply with the Act's nonattainment

provisions. *See* § 113(a)(5); *United States v. Solar Turbines,* 732 F.Supp. at 537.

The EPA contends that this suit is specifically authorized by subsection (a)(5) of § 113.[2] The version of § 113(a)(5), 42 U.S.C. § 7413(a)(5), in effect at the time the suit was filed provided that:

> Whenever, on the basis of information available to him, the Administrator finds that a state is not acting in compliance with any ... plan provisions required under section 7410(a)(2)(I) of this title and part D of this subchapter, he may issue an order prohibiting the construction or modification of any major stationary source in any area to which such provisions apply or he may bring a civil action under subsection (b)(5) of this section.[3]

This section allows the EPA to take enforcement action upon a finding that a state has issued a permit that does not properly subject the source to the Act's nonattainment provisions as contained in § 7410(a)(2)(I) and Part D of Subchapter I of the Clean Air Act. *See United States v. Solar Turbines,* 732 F.Supp. at 537. Indiana APC–19 section 8 is part of the State of Indiana's permitting program required under the Clean Air Act's nonattainment provisions. *See* 42 U.S.C. § 7503. The EPA contends that because the state failed to comply with the permitting provisions required under the Clean Air Act's nonattainment provisions, it may bring suit under subsection (b)(5) of § 113 as specifically authorized in subsection (a)(5).

The court agrees with the government that § 113(a)(5) authorizes the EPA to bring an enforcement action pursuant to subsection (b)(5) when a state issues a permit that fails to comply with the Act's nonattainment provisions. The EPA cannot rely on subsection (a)(5) in this case, however, because AM General is not subject to suit under subsection (b)(5).

Subsection (b) of § 113 provides that:

> The administrator shall, in the case of any person which is the owner or operator of a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day of violation, or both, whenever such person—
>
> \*     \*     \*     \*     \*     \*
>
> (5) attempts to construct or modify a major stationary source in any area with respect to which a finding under subsection (a)(5) of this section has been made.[4]

**2.** This contention differs from the theory asserted in the EPA's complaint. The EPA's complaint indicated that § 113(a)(1) provided the basis for the suit, not § 113(a)(5). Although the EPA appears to have abandoned its reliance on the provisions of subsection (a)(1) to the extent it still intends to do so, the court finds that the reasoning of *Solar Turbines* bars the EPA from proceeding under that section. Under *Solar Turbines,* the NOV issued to AM General fails to make out a violation of the Act because it only charges AM General with operating its facility pursuant to a permit that did not meet the requirements of Indiana's SIP. 732 F.Supp. at 539. As in *Solar Turbines,* this does not allege a violation of any clear standard on AM General's part. As implicitly recognized by the government, any cause of action the EPA has against AM General lies under subsection (a)(5). The EPA contends that the allegations in its complaint support a cause of action under § 113(a)(5) under the notice pleading standards of the Federal Rules of Civil Procedure, even though it does not specifically rely on that subsection in its complaint. Because the court

finds that the EPA may not maintain suit under § 113(a)(5), the court need not address whether the EPA's complaint gave sufficient notice to AM General of its intent to assert a claim under §§ 113(a)(5) and 113(b)(5).

**3.** The Clean Air Act of 1990 amended § 113(a)(5) to apply any time the EPA finds that a state is not acting in compliance with any requirement or prohibition of the chapter relating to the construction of new sources or the modification of existing sources. *See* 42 U.S.C. § 7413(b)(3) (1992 Supp.), as amended by the Clean Air Act of 1990. Under the prior version of the Act quoted in the text, § 113(a)(5) only authorized suits against persons who attempted to construct or modify a source located in a nonattainment area. Because St. Joseph County was a nonattainment area during the time period relevant to the suit, the 1990 amendments to § 113 do not effect the court's analysis.

**4.** Under the 1990 amendments, this provision is now at § 113(b)(3). *See* 42 U.S.C. § 7413(b)(3) (1992 Supp.).

This section authorizes the EPA to bring an enforcement action against a person when, after a finding has been made that a state is not acting in compliance with the Act's nonattainment provisions, an owner/operator persists in attempting to construct or modify its facility in violation of that finding. *United States v. Solar Turbines*, 732 F.Supp. at 537. By only allowing suits against sources located in an area where a "finding under subsection (a)(5) has been made", this section, by its terms, only allows the EPA to sue persons who attempt a modification construction after the EPA has found that the state is not acting in compliance with its SIP. No enforcement authority is provided by the statute's plain language when, as here, a source is modified in reliance on a state-issued permit and the EPA later finds that the permit should not have been issued by the state permitting authority.

St. Joseph County issued the permit authorizing AM General's modification of its Mishawaka facility on February 6, 1986. According to the EPA's complaint, AM General modified the Mishawaka facility as authorized by that permit on or about February 11, 1986, but the EPA did not issue its NOV until June 19, 1986. Because AM General modified its plant in reliance on the St. Joseph County permit before the EPA issued its finding that the permit failed to comply with the provisions of APC–19, AM General is not subject to suit under § 113(b)(5). The court agrees with the EPA that subsection (a)(5) allows the EPA to challenge the validity of a state-issued permit, but to do so via a civil suit against the permit holder, the EPA must notify the state and the permit holder that the EPA contests the validity of the permit by issuing an FOV prior to any modification done in reliance on the permit.

The EPA contends that it has consistently interpreted sections 113(a)(5) and (b)(5) as giving it the authority to issue orders or file suit if a state has issued a deficient permit, and argues that this interpretation is entitled to deference pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). In support of its authority to bring suit, the EPA points to an EPA Memorandum dated July 15, 1988. *See* Memorandum, Procedures for EPA to Address Deficient New Source Permits Under the Clean Air Act, July 15, 1988 (hereinafter "Memorandum").

Assuming that the position outlined in the Memorandum is entitled to deference as a reasonable interpretation of the Clean Air Act, nothing in the Memorandum interprets § 113 to authorize suit against AM General under the factual scenario presently before the court. The Memorandum recommends EPA procedures for addressing deficient new source permits under the Clean Air Act and emphasizes the need for quick action when the EPA wishes to challenge a state-issued permit. Contrary to the EPA's assertion, the Memorandum reinforces the view that the EPA may not rely on § 113(b)(5) in this case.

Notably, the introduction to the Memorandum states:

> Our ability to influence the terms of a permit, both informally and through legal procedures, diminishes markedly the longer EPA waits after a permit is issued before objecting to a specific term. This is due both to legal constraints, that is, tight time limits for comments provided in the regulations, and to equitable considerations that make courts less likely to require new sources to accept more stringent permit conditions the farther planning and construction have progressed. Accordingly, as a prerequisite to successful enforcement action, it is imperative that EPA review all major source permit packages on a timely basis and provide detailed comments on deficiencies. If EPA does not obtain adequate consideration of those comments, it is also important for EPA to protect air quality by prompt and consistent enforcement action against sources whose permits are found lacking.

Memorandum at 2. Section 5 of the Memorandum, which specifies procedures for challenging permits such as those at issue in this case, directs EPA officials to:

> A. Issue § 113(a)(5) order ... as expeditiously as possible, preferably within 30

days after the permit is issued, requiring the source not to commence construction, or if already started, to cease construction (on the basis that it would be constructing with an invalid permit), and to apply for a new permit.

B. From the outset of EPA's involvement, keep the source informed of all EPA's attempts to convince the permitting agency to change the permit.

C. Issue an NOV (113(a)) as soon as construction commences if EPA determines penalties are appropriate.

Memorandum at 6. Nothing in this language suggests that the EPA has interpreted § 113(a)(5) as authorizing suit under the facts of this case. The Memorandum candidly addresses the legal and equitable limitations on the EPA's ability to challenge state-issued permits, and specifies procedures that the EPA must follow to overcome those limitations. The EPA failed to follow its own recommended procedures in this case: the EPA did not issue a NOV or FOV until four months after St. Joseph County issued the permit to AM General, well in excess of the recommended thirty days, and well after AM General had acted on its permit.

The EPA points out that it informed the County Health Department and AM General that it considered the proposed permit to be deficient before the County Health Department approved the permit. The EPA initially recommended that St. Joseph County disapprove the amendments to AM General's operation permit because the permit failed to specify any method for determining compliance and further clarified its concerns regarding the AM General permit in a letter dated January 16, 1986.

The facts before the court indicate that the County Health Department ignored the EPA's recommendation that LAER compliance was a necessary part of any permit issued pursuant to APC–19. However, the EPA has not argued, and the court cannot find, anything in § 113 that allows the EPA to bring suit when a local permitting authority issues a permit against the recommendations made by the EPA during the permitting process. Nothing in the Act

makes the EPA's recommendations regarding state issued permits binding on the state or on the permit holder. Nor does the EPA argue that its recommendations constituted a FOV which subjected AM General to suit under § 113(a)(5) and (b)(5). As cautioned in the EPA policy memorandum, if a local permitting authority inadequately considers EPA's comments during the permitting process, it is important that EPA take prompt and consistent enforcement action. The EPA failed to take prompt action in this case, thus foreclosing an enforcement action against AM General under § 113(b)(5).

Interpreting § 113(b)(5) to only allow suits against persons who modify a source after the EPA has found a state-issued permit to be invalid is consistent with the principle that enforcement actions under § 113 may only be maintained when clear standards are violated. "To accuse a source of a violation necessitates its ability to have avoided the violation or to have a means of complying with an administrative order so that it may correct the violation." *United States v. Solar Turbines*, 732 F.Supp. at 539. The County Health Department's decision to issue a permit was outside AM General's control.

Of course, once the EPA had issued its FOV declaring the AM General permit invalid, any attempt by AM General to modify its plant in reliance on the permit could have subjected AM General to the full range of penalties under § 113. However, until the EPA had issued a formal finding under § 113(a)(5) contesting the validity of the permit, no clear standard existed, apart from the terms of the permit itself, by which AM General could have determined that its modifications violated the terms of the Act. The state had determined that AM General's modifications complied with Indiana's SIP, and had issued a permit. Nothing in the Clean Air Act suggests that to avoid liability under § 113, AM General was required to stay its plant modifications until some unspecified time in the future to see whether the EPA agreed with the County's decision to issue the permit.

In summary, the court disagrees with AM General to the extent it argues that the EPA is relegated to challenging state-issued permits through state administrative channels; as noted above, §§ 113(a)(5) and (b)(5) provide authority for an EPA challenge to state-issued permits via enforcement proceedings in federal district court. Nevertheless, under the plain language of those sections, enforcement proceedings against the holder of a permit may only be maintained when the permit holder undertakes plant modifications after the EPA has found the state to have issued a permit in violation of the state's SIP. Nothing in § 113 authorizes the EPA to retroactively invalidate a permit issued by a duly authorized state authority and then institute enforcement proceedings against a permit holder for modifying a facility without a valid permit.

Because the EPA did not act until after AM General had modified its plant and had begun operating under the terms of the St. Joseph County permit, the EPA cannot now charge that AM General modified its facility pursuant to an invalid permit. Accordingly, AM General's motion for summary judgment should be granted.

## IV. THE EPA'S MOTION FOR JUDGMENT ON THE PLEADINGS

The EPA moves for judgment on the pleadings with respect to AM General's request for injunctive relief on its counterclaim. The EPA argues that AM General's request that this court order the EPA to act on the redesignation proposal is now moot in light of Congress' November 1990 amendments to the Clean Air Act, which set forth new standards for achieving status as an attainment area for ozone. Accordingly, the EPA suggests that this court has no power to compel it to apply previous Clean Air Act standards as addressed in Indiana's 1985 redesignation proposal. The court agrees; to the extent AM General's counterclaim seeks to compel the EPA to act on the State of Indiana's redesignation proposal, the 1990 Act makes AM General's counterclaim moot.

The subject matter jurisdiction of federal courts extends over actual or live controversies between parties. This requirement of justiciability continues throughout the pendency of an action and cannot exist only at the time of filing. *Defunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam); *Chiles v. Thornburgh,* 865 F.2d 1197 (11th Cir.1989); *Ragsdale v. Turnock,* 841 F.2d 1358 (7th Cir.1988). If later events resolve the controversies present in an action, those events render the case moot and leave the court without a live controversy for adjudication. *American Medical Ass'n v. Bowen,* 857 F.2d 267 (5th Cir.1988); *Carass v. Williams,* 807 F.2d 1286 (6th Cir.1986); *Aguirre v. S.S. Sohio,* 801 F.2d 1185 (9th Cir.1986); *Olagues v. Russoniello,* 770 F.2d 791 (9th Cir.1985). Mootness occurs with respect to a party's challenge to an administrative agency's conduct when legislative decisions have altered that agency's legal duties. *Folkstone Maritime, Ltd. v. CSX Corp.,* 866 F.2d 955, 957 (7th Cir.1989); *Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin,* 747 F.2d 407 (7th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985).

AM General claims that the November 1990 amendments were intended to be wholly prospective. AM General offers no specific authority in support of this position, but contends that legislative enactments generally are so interpreted absent congressional statements to the contrary. In this instance, however, both logic and Congress' language support a retrospective application of the Act's standards for approving redesignation proposals.

In enacting the November 1990 amendments, Congress intended that such provisions should apply retroactively to any pending state proposals for plans or revisions. 42 U.S.C. § 7407(d). Indeed, given the new emission standards for nonattainment areas and goals for achievement of attainment status, it would be the height of bureaucratic inefficiency for the EPA to proceed to review a request for redesig-

nation submitted based on previous standards.

AM General further argues that the court still should consider those portions of the counterclaim that allege that the EPA has unreasonably delayed action on Indiana's redesignation request. AM General contends that its counterclaim is not moot because it seeks declaratory relief retroactively designating St. Joseph County as an attainment area beginning no later than April 11, 1985. Because AM General seeks a declaration regarding the lawfulness of the EPA's pre–1990 conduct, AM General contends that its counterclaim has not become moot by virtue of the 1990 amendments to the Clean Air Act.

Assuming that AM General has asserted a valid claim for declaratory relief regarding the EPA's pre–1990 failure to act on Indiana's redesignation petition, the court's ruling in favor of AM General on the EPA's complaint renders such a claim moot. Because the court has found that AM General is not subject to suit by the EPA for modifying its facility without a valid permit as required under the nonattainment provisions of APC–19, any declaration that the EPA should have redesignated St. Joseph County as an attainment area prior to 1990 would be of no legal effect, and would not resolve a live case or controversy between the parties.

Accordingly, the court finds that Congress' enactment of the November 1990 revisions to the Clean Air Act, along with the court's favorable disposition of AM General's summary judgment motion, have rendered the defendant's counterclaim for injunctive relief moot. This court is no longer faced with a request to compel the EPA to act on a redesignation plan that has been outdated by the most recent amendments to the Act. The EPA's motion for judgment on the pleadings is appropriate and will be granted.

## V. AM GENERAL'S MOTION FOR RECONSIDERATION

■ AM General has also sought reconsideration of the court's September 21, 1990 order denying its summary judgment motion on Count I of its counterclaim. AM General has presented no new arguments or law compelling reconsideration of the September 21 ruling. Moreover, as discussed in the previous section, AM General's request for reconsideration has been made moot by the 1990 amendments to the Clean Air Act and by the court's decision in favor of AM General on the EPA's claim.

In its earlier motion, AM General sought judgment as a matter of law on Count I of its counterclaim and on the EPA's complaint. AM General's basic argument on summary judgment was that the EPA has a mandatory duty under § 107(d)(2) of the Clean Air Act, 42 U.S.C. § 7407(d)(2), to act upon a state's request to redesignate an air quality control region no later than sixty days after the state submits its request. In the pre-November 1990 version, that section provided:

> Not later than sixty days after the submittal of the list under paragraph (1) of this subsection the Administrator shall promulgate each such list with such modifications as he deems necessary. Whenever the Administrator proposes to modify a list submitted by a State, he shall notify the State and request all available data relating to such region or portion, and provide such State with an opportunity to demonstrate why any proposed modification is inappropriate.

42 U.S.C. § 7407(d)(2). AM General argued that EPA's failure to act on Indiana's proposed redesignation within the sixty-day period barred the EPA from enforcing emission standards that were affected by the proposal.

In the September 21 opinion, the court denied AM General's motion based on *General Motors Corporation v. United States*, 496 U.S. 530, 110 S.Ct. 2528, 110 L.Ed.2d 480 (1990), in which the Supreme Court considered: (1) whether the four-month time limit on EPA review of an original state implementation plan or SIP under the Clean Air Act also applies to its review of a SIP revision; and (2) whether, if the EPA fails to complete its review of a SIP revision in a timely manner, it is prevented from enforcing an existing SIP. The Court

answered both questions in the negative, holding that the four-month time limit for the EPA to make its determinations concerning a SIP plan applies only to the originally submitted plan and not to any subsequently proposed revisions of that plan. *General Motors Corp. v. United States,* 496 U.S. at 536–539, 110 S.Ct. at 2531–33.

Based on the holding in *General Motors Corp. v. United States,* this court held that the EPA was under no duty to review Indiana's proposed revisions of its SIP within any time frame other than a reasonable one. Accordingly, the EPA was entitled to enforce the SIP in existence against AM General during its review of Indiana's proposed revisions, notwithstanding the effect that the adoption of such revisions would have on AM General's alleged violations of Indiana's SIP and the Clean Air Act.

In support of its motion for reconsideration, AM General cites the pre-November 1990 version of § 107(d)(2) and the same authority referred to in support of its original summary judgment motion: *American Cyanamid Company v. EPA,* 810 F.2d 493 (5th Cir.1987); *Bethlehem Steel Corp. v. EPA,* 723 F.2d 1303, 1306 (7th Cir.1983); *Western Oil & Gas v. EPA,* 633 F.2d 803, 805 (9th Cir.1980); *NRDC v. Train,* 545 F.2d 320, 324–25 (2nd Cir.1976). As noted in the earlier opinion, however, these cases generally discuss the EPA's duty to comply with the requirements of the Clean Air Act, but do not specifically address the asserted sixty-day requirement (or the four-month deadline, as determined by the Supreme Court).

In its most recent motion, AM General attempts to distinguish *General Motors Corp. v. United States,* arguing that the Court's holding addressed § 110 of the Clean Air Act and not § 107, which is at issue here. The distinction does not distinguish the *General Motors* reasoning from this case.

The *General Motors* Court specifically noted the lack of time limitations placed on the EPA's consideration of a state's proposal for redesignation. In addressing what might be interpreted as potential deadlines, the Court found that the four-month time limit from § 110(a)(2) of the Clean Air Act to be most applicable. 496 U.S. at 538–539, 110 S.Ct. at 2532–33. As discussed above, however, the Court found that the four-month limit was not meant to apply to requests for redesignation. Accordingly, the Court's decision in *General Motors* defeats AM General's suggestion that a sixty-day time limit applies to redesignation requests both explicitly by the general finding that the EPA is faced with no time limit for reviewing such requests, and implicitly with the specific finding that any conceivable time limitation would be one of four months.

AM General has not persuaded the court that its prior ruling was incorrect. In its final plea for reconsideration, AM General argues that regardless of the lack of time restraints on the EPA in reviewing a redesignation proposal, the court should utilize its equitable powers to compel the federal agency to act. As discussed above, however, the November 1990 amendments to the Clean Air Act foreclose the court from rendering such equitable relief. The defendant's motion for reconsideration, therefore, will be denied.

## VI. MOTION TO COMPEL

On May 29, 1992, well after the dispositive motions discussed above were taken under advisement by the court, AM General, pursuant to Fed.R.Civ.P. 37, filed a motion to compel the EPA to respond to certain discovery requests. Because the court has found that AM General is entitled to summary judgment on the EPA's complaint, and AM General's counterclaim must be denied as moot, the court similarly denies as moot AM General's motion to compel.

## VII. CONCLUSION

For the foregoing reasons, the court hereby:

(1) GRANTS the defendant's motions for summary judgment, and directs entry of judgment for AM General on the EPA's complaint;

(2) DENIES the defendant's motion to reconsider the order of September 21, 1990; and

(3) GRANTS the plaintiff's motion for judgment on the pleadings with respect to the defendant's counterclaim, finding that the defendant's claims for injunctive relief by way of its counterclaim have been rendered moot by Congress' November 1990 amendments to the Clean Air Act, 42 U.S.C. § 7401 *et seq.* and the court's disposition of AM General's motion for summary judgment, and directs entry of judgment for the EPA on all counts of AM General's counterclaim.

SO ORDERED.