UNITED STATES of America,
Plaintiff,

The State of Indiana, the State of Ohio, and the Northwest Air Pollution Authority, Plaintiff–Intervenors,

v.

BP EXPLORATION & OIL CO., Amoco Oil Company, and Atlantic Richfield Company, Defendants.

No. 2:96–CV–95.

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 29, 2001.

Carol A. Davilo, United States Attorneys Office, Dyer, IN, Frances M. Zizila, Adam Kushner, U.S. Department of Justice, Environmental Enforcement Section, Environment and Natural Resources Division, Washington, DC, Steven D. Griffin, Indiana Attorney General, Indiana Government Center South, Indianapolis, IN, Bryan F. Zima, Attorney General's Office, Environmental Enforcement Section, Columbus, OH, Laughlan H. Clark, Visser Zender and Thurston, Bellingham, WA, for plaintiffs.

William L. Patberg, Shumaker Loop and Kendrick, Toledo, OH, Robert M. Olian, Sidley Austin Brown & Wood, James Nolan, Office of General Counsel, Amoco Oil Company, Chicago, IL, Angus Macbeth, Sidley and Austin, Washington, DC, for defendants.

### *ORDER*

LOZANO, District Judge.

This matter is before the Court on United States of America's Motion for Entry of Consent Decree, filed on April 26, 2001. For the reasons set forth below, the motion is GRANTED. The Court notes that it previously granted the Government's motion for substitution of pages to the consent decree during the June 5, 2001, hearing. Accordingly, the revised pages attached to the motion for substitution of pages have been inserted into the final consent decree.

### *BACKGROUND*

The Government seeks entry of a proposed consent decree that resolves each of the claims involved in this litigation. The decree sets forth a comprehensive program of compliance measures which BP Exploration & Oil Company ("BP") will undertake to dramatically reduce emissions of oxides of nitrogen ("$NO_x$"), sulfur dioxide ("$SO_2$"), particulate matter ("PM"), carbon monoxide ("CO"), benzene, and volatile organic compounds ("VOCs") from each of BP's domestic refineries. Specifically, pursuant to the decree, BP will: (1) install and operate pollution control technologies that will reduce emissions of $NO_x$ and $SO_2$; (2) operate sulfur recovery plants in compliance with new source performance standards ("NSPS"); (3) where necessary, install tail gas units; (4) adopt and implement enhanced monitoring and repair programs to reduce benzene emissions; (5) essentially eliminate excess flaring of hydrogen sulfide gases through a protocol for identifying and correcting the cause of such flaring; (6) undertake measures to ensure CO emissions from its fluidized catalytic cracking units meet NSPS on a permanent basis; (7) monitor performance and install monitoring controls under NSPS; (8) install PM controls to comply with NSPS emissions limit; and (9) obtain permits to incorporate the emissions limits and schedules set forth in the decree in federally enforceable permits. BP will also pay a $10 million civil penalty and be required to invest another $10 million in implementing five environmentally beneficial projects.

On March 29, 1996, the Government filed a 13–count complaint against Amoco Oil Company ("Amoco") for alleged violations of the Resource Conservation and Recovery Act ("RCRA"), the Clean Air Act ("CAA"), the Emergency Planning and Community Right–to–Know Act ("EPCRA"), and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") arising from Amoco's Whiting, Indiana facility. On June 30, 1998, the Government filed a first amended complaint in which it added four new claims under the CAA.

BP, which subsequently purchased the Whiting facility, entered negotiations with the Government to resolve the litigation. During the course of negotiations, the parties sought to remedy alleged violations at

facilities in seven other states, including: Ohio, Washington, Texas, Virginia, North Dakota, Utah, and California.

On January 22, 2001, the Government filed a second amended complaint which included the allegations regarding the facilities in the additional states. Contemporaneously with filing the second amended complaint, the Government lodged a proposed consent decree. The Government published a notice of lodging of the consent decree in the Federal Register and signified its intent to receive comments from the public regarding the proposed consent decree for a 30-day period.

The Government received three letters in opposition to the proposed consent decree. Of these three letters, only one letter contained substantive comments. One letter merely listed additional parties who wished to join the substantive comments outlined in the first letter. The third letter concerned a refinery not governed by the proposed consent decree.[1]

The Government subsequently moved for entry of the consent decree and responded to each of the commenters' objections. On June 5, 2001, this Court held a hearing regarding the consent decree and heard arguments from each party and the commenters' counsel. At the conclusion of the hearing, this Court notified the parties and commenters that it was satisfied that each of the requirements to approve the consent decree had been met with the exception of the notice requirement. This Court informed the parties of its concern regarding whether the notice requirement had been met and ordered further briefing on the issue.

One June 13, 2001, the Government requested an extension of time in which to submit its notice brief. The Government explained that it had sent notice to each state with facilities governed by the consent decree on June 12, 2001, and that it intended to file a third amended complaint reflecting that it had given such notice. On June 19, 2001, the commenters filed a memorandum with this Court stating that they would no longer have objection to entry of the proposed consent decree based upon the Government's issuance of notice and filing of a third amended complaint.

The Government has now filed its notice brief and third amended complaint.

*DISCUSSION*

■ This Court must review a consent decree to assure that it is fair, reasonable, adequate, and consistent with applicable law. *See United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir.1997); *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir.1991); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir.1990); *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980). The underlying purpose of this review is to determine whether the decree adequately protects and is consistent with the public interest. *United States v. Seymour Recycling Corp.*, 554 F.Supp. 1334, 1337 (S.D.Ind.1982). In other words, a consent decree will not be approved where the agreement is illegal, a product of collusion, inequitable, or contrary to the public good. *Kelley v. Thomas Solvent Co.*, 717 F.Supp. 507, 515 (W.D.Mich.1989). In reviewing a consent decree, this Court need not inquire into the precise legal rights of the parties, nor reach and resolve the merits of the parties' claims. *Metropolitan*, 616 F.2d at 1014. Rather, it is ordinarily sufficient if this Court determines whether

---

1. The parties submitting comments to the Government will be collectively referred to as "commenters."

the consent decree is appropriate under the particular facts of the case. *Id.*

■ In its review, the Court must keep in mind the strong policy favoring voluntary settlement of litigation. *Id.* at 1014; *Cannons,* 899 F.2d at 84; *United States v. Hooker Chem. & Plastics Corp.,* 776 F.2d 410, 411 (2d Cir.1985). This presumption is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal agency, like the Environmental Protection Agency ("EPA"), which enjoys substantial expertise in the environmental field. *See Akzo,* 949 F.2d at 1426; *Hooker,* 776 F.2d at 411; *SEC v. Randolph,* 736 F.2d 525, 529 (9th Cir.1984); *Kelley,* 717 F.Supp. at 515–16. Although this Court should pay deference to the judgment of the government agency which has negotiated and submitted a proposed decree, this Court must avoid any rubberstamp approval in favor of an independent evaluation. *Kelley,* 717 F.Supp. at 515; *Seymour,* 554 F.Supp. at 1337–38. However, this Court must not substitute its judgment for that of the parties nor conduct the type of detailed investigation required if the parties were actually trying the case. *Akzo,* 949 F.2d at 1434; *United States v. County of Muskegon,* 33 F.Supp.2d, 614, 621 (W.D.Mich.1998); *Kelley,* 717 F.Supp. at 515; *Seymour,* 554 F.Supp. at 1338 (citing *Airline Stewards v. American Airlines,* 573 F.2d 960, 963 (7th Cir.1978)). The test is not whether this Court would have fashioned the same remedy nor whether it is the best possible settlement. *Cannons,* 899 F.2d at 84; *Kelley,* 717 F.Supp. at 515 (citing *Armstrong v. Board of School Directors,* 616 F.2d 305, 315 (7th Cir.1980), *overruled on other grounds, Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998)).

■ As an initial matter, the Court notes that the commenters no longer have any objection to entry of the proposed decree; however, this Court will nonetheless address their previous objections. The commenters alleged that this Court lacked subject matter jurisdiction because the consent decree imposed obligations and released BP from liability for eight refineries when not all eight were listed in each count of the second amended complaint. The Supreme Court has explained that a court cannot approve a consent decree unless: (1) it springs from and serves to resolve a dispute within the court's subject matter jurisdiction; (2) it comes within the general scope of the case made by the pleadings; and (3) it furthers the objectives of the law upon which the complaint was based. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 525, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). Commenters' initial claim concerned the second factor—scope of the case made by the pleadings. This Court notes that some claims in the complaint refer to "Defendants" which is adequate to refer to all eight facilities. Further, a claim need not be expressly set out in the pleadings to fall within the general scope of the pleadings. *See United States v. Charles George Trucking, Inc.,* 34 F.3d 1081, 1090 (1st Cir.1994) (claim not in pleading but related to pleaded claims falls within general scope of pleadings). A federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the Court could have awarded after a trial. *Local No. 93,* 478 U.S. at 525, 106 S.Ct. 3063; *Sierra Club, Inc. v. Electronic Controls Design, Inc.,* 909 F.2d 1350, 1355 (9th Cir.1990). Upon review of the complaint and the proposed consent decree, this Court finds the decree comes within the general scope of the pleadings.

■ The commenters also alleged that this Court lacked subject matter jurisdiction because the Government failed to

provide notice to BP or the states as required under the CAA in section 113(a). The CAA requires that the EPA provide a defendant and the relevant state with a notice of violation ("NOV") of the applicable state implementation plan ("SIP") 30 days before filing a civil suit under section 113(a)(1). *United States v. AM General Corp.,* 808 F.Supp. 1353, 1362 (N.D.Ind. 1992). The EPA is empowered to bring such a suit only on the basis of the specific violation alleged in the NOV. *Id.* Courts generally view the sufficiency of an NOV liberally. *Id.* Indeed, the CAA does not even specify the form which the notice must take. *United States v. Brotech Corp.,* No. Civ. A. 00–2428, 2000 WL 1368023, at *2 (E.D.Pa. Sept.19, 2000) (noting lack of form in statute and finding letter sent by EPA sufficient). Rather than formal written notice, actual notice of violations is sufficient. *See United States v. B & W Inv. Properties,* 38 F.3d 362, 367 (7th Cir.1994) (noting that defendants had actual notice and their claim of lack of notice was meritless). The notice requirement, however, is limited to violations of SIPs. *See B & W,* 38 F.3d at 366 (in noting there is no notice requirement for regulation of hazardous air pollutants, the court states that section 113(a) like section 113(b) distinguishes SIPs from section 112 violations and similarly incorporates an explicit notice requirement into the former, but not into the latter). CAA claims not involving SIPs do not trigger the notice requirement. *Id.*

As the Government's supplemental submissions demonstrate, the states and BP had written notice and/or actual notice 30 days prior to the filing of the various complaints. With regard to the initial complaint filed on March 29, 1996, only two claims concerned a SIP, in particular, the Indiana SIP. The Government sent a NOV regarding the two claims to both Amoco, the owner of the Whiting facility at that time, and the Indiana Department of Environmental Management on July 12, 1994, more than 30 days prior to filing suit. The remaining claims in the complaint, as well as the four additional claims in the first amended complaint, either did not concern the CAA or were pursuant to non-SIP violations of the CAA and did not require notice. To the extent any of the claims against the facilities in the additional states alleged in the second amended complaint required notice, the Government's supplemental submissions by way of affidavits from EPA personnel, letters from state agencies, and relevant confidentiality agreements, demonstrate that the states were given actual notice of the alleged violations more than 30 days prior to filing of the second amended complaint. Accordingly, this Court finds that the Government complied with the notice requirement.[2] As the claims are brought pursuant to federal statutes over which this Court has original jurisdiction and the commenters' claims regarding the pleadings and notice are meritless, this Court has subject matter jurisdiction over the action.

*Fairness*

▮▮▮▮ A consent decree must be both procedurally and substantively fair. *Cannons,* 899 F.2d at 86. Procedural fairness concerns the negotiations process, i.e., whether it was open and at arms-length. *Id.* Substantive fairness concerns concepts of corrective justice and accountability. *Id.* at 87. In assessing "fairness", courts consider: (1) a comparison of the strength of plaintiff's case versus the amount of settlement offer; (2) the likely complexity, length, and expense of the litigation; (3) the amount of opposition to the settlement

---

**2.** Notice to BP has never been seriously contested as BP participated in the negotiations with the Government which brought about the proposed decree.

among affected parties; (4) the opinion of counsel; and (5) the stage of the proceedings and amount of discovery already undertaken at the time of the settlement. *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir.1985). Fairness should be evaluated from the standpoint of signatories and nonparties to the decree. *Akzo,* 949 F.2d at 1435.

The commenters initially alleged the consent decree was procedurally unfair because (1) the public did not learn of the proposed decree until the notice of lodging was filed on February 8, 2001; (2) no members of the public, including people in the eight states directly affected, were ever invited to participate in the negotiation process; (3) commenters were not given an extension beyond the typical 30-day comment period; (4) the underlying case was never exposed to the revealing light of public litigation; and (5) certain documents involved in the negotiations between the Government and BP remain off limits to the public as business confidential in contravention of the Department of Justice's policy that it will not enter into consent decrees that are subject to confidentiality provisions as set out in 28 C.F.R. section 50.23(a), nor is there any documentation as to why there should be an exception to this policy.

▮▮▮▮ "The confidentiality of the negotiations does not have any bearing on the candor, openness, and bargaining balance as between the parties to the negotiation ...." *United States v. Bliss,* 133 F.R.D. 559, 569 (E.D.Mo.1990). The parties need to negotiate in good faith and at arm's length. The Government is under "no obligation to telegraph its settlement offers, divulge its negotiating strategy in advance, or surrender the normal prerogatives of strategic flexibility which any negotiator cherishes." *Cannons,* 899 F.2d at 93. There is no requirement that the Government allow third parties to participate in settlement negotiations. Indeed, the Government's new submissions establish that the people of the eight states affected by the decree were represented in the negotiations by the agencies charged with enforcing the environmental regulations in their respective states. Further, 28 C.F.R. § 50.7 merely requires the Department of Justice to publish proposed consent decrees "at least 30 days" before judgment is entered. The Government complied with this regulation when it published the proposed decree in February 2001. Assuming the Government's refusal to extend the comment period bears on fairness, it appears that the commenters are at least partially to blame for not responding within the 30-day time period. Moreover, the Government ultimately did consider comments received past the 30-day cutoff and there is no implication that they did not thoroughly consider the comments.

With respect to the availability of documents, paragraph 80 of the consent decree states, "[a]ll information and documents submitted by BP to the United States pursuant to this Consent Decree shall be subject to public inspection, unless subject to legal privileges or protection or identified and supported as business confidential by BP in accordance with 40 C.F.R. Part 2." This paragraph specifically applies to documents submitted pursuant to the decree. It makes no mention of documents involved in the negotiations. The paragraph merely complies with existing EPA regulations regarding business confidential documents. *See* 40 C.F.R. Part 2. To the extent paragraph 80 can be read as a confidentiality provision, it certainly seems sufficient to warrant departing from the Department of Justice's regulations regarding confidentiality provisions because of a competing EPA regulation regarding business confidential information.

There is simply nothing in the record or even in the commenters' initial claims to indicate that the negotiations were conducted in bad faith or that the proposed decree was a product of collusion. This litigation has been pending for several years and some aspects have been resolved by this Court, namely, granting in part and denying in part the Government's partial motion for summary judgment. The negotiations were conducted over several months and each side was represented by engineers and numerous competent attorneys who approve of the decree. It is very likely that a trial in this matter could take years and would be very complex. Further, the strength of the Government's claims is unsettled and it is unclear the Government could obtain the same extensive relief in litigation. Further, the commenters have now withdrawn their opposition to the decree. Considering all these factors, this Court is satisfied that the decree is both procedurally and substantively fair.

*Reasonableness*

■ In evaluating the reasonableness of the consent decree, this Court considers: (1) the nature and extent of potential hazards; (2) the availability and likelihood of alternatives to the consent decree; (3) whether the decree is technically adequate to accomplish the goal of cleaning the environment; (4) the extent to which the consent decree furthers the goals of the statutes which form the basis of the litigation; (5) the extent to which this Court's approval of the consent decree is in the public interest; and (6) whether the consent decree reflects the relative strength or weakness of the Government's case against the Defendants. *Akzo,* 949 F.2d at 1436; *Cannons,* 899 F.2d at 89–90; *Seymour,* 554 F.Supp. at 1339.

The decree addresses hazards such as $NO_x$, $SO_2$, CO, and benzene. The only likely alternative to the decree appears to be complex and lengthy litigation which would expend limited Government resources not to mention valuable judicial resources. Further, as mentioned previously, it is not clear the Government could obtain the same extensive relief in litigation. The decree's compliance measures will reduce $NO_x$ emissions by 20,000 tons annually, $SO_2$ emissions by 21,400 tons annually, and carbon monoxide and benzene emissions by thousands of tons annually. Two-thirds of the reductions will occur in the first four years after entry of the decree. In addition, BP will pay a civil penalty of $10 million, $9.5 million of which will be paid to the United States Treasury and $500,000 of which will go to the Indiana Environmental Management Fund to be used for the monitoring and reduction of volatile organic compounds in the vicinity of the Whiting refinery. BP will also invest another $10 million in implementing five environmentally beneficial projects which will further reduce $NO_x$ and $SO_2$ emissions from its petroleum refineries. Further, the decree requires BP to incorporate the emissions limits and schedules set forth in the decree in federally enforceable permits, which will forever secure benefits to the public in the form of reduced hazardous emissions. In total, it is clear the decree is technically adequate to accomplish the goal of cleaning the environment, furthers the goal of all involved statutes, and is in the public interest.

Commenters initially claimed the decree was unreasonable because it allowed out-of-area credit offset swapping, used an improper emissions credits equation, allowed inappropriate $SO_2$ credit offsets and carved out an exception to the rule of 42 U.S.C. § 7503(c)(2) which does not permit reductions required by law to be used as credits. At the June 5 hearing, the commenters' counsel withdrew its first objection regarding out-of-area offsets swapping after acknowledging that the decree does not in

fact allow such swapping. With regard to the rest of the objections, they are premised on the notion that BP is getting rewarded for its reductions when the reductions are actually required by the law. The CAA is only supposed to reward reductions that go beyond what is required by law. The flaw in the commenters' claim is that it assumes BP was violating the CAA and, thus, required to make the reductions. The Government believes BP was violating the CAA; however, BP believes it has strong defenses to such claims. The decree can be viewed as the essence of settlement—a compromise. No party in the case got everything it wanted. Further, the Government obtained extensive relief without the burden of proving its case. This Court also notes that the decree only allows BP to use 10% to 20% of the credits it generates from reductions.

Considering all the evidence and the factors mentioned above, this Court finds the proposed decree is reasonable.

*Adequate/Consistent With Applicable Law/Public Interest*

▆ A consent decree may not contravene the statute upon which the initial claims are based. Where a law suit seeks to enforce a statute, the most important factor as to public policy is whether the decree comports with the goals of Congress. *Sierra Club v. Coca–Cola Corp.,* 673 F.Supp. 1555, 1556 (M.D.Fla.1987). Here, there are four statutes at issue: (1) CAA; (2) CERCLA; (3) RCRA; and (4) EPCRA. One of the primary purposes of the CAA is to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1) (CAA purpose). Similarly, the goal of CERCLA is to protect and preserve public health and the environment from the effects of the release of hazardous substances and to ensure that those responsible for problems

caused by disposal of hazardous chemicals bear the costs for remedying the harmful conditions they created. *Cannons,* 899 F.2d at 90–91 (CERCLA purpose); *Kelley,* 717 F.Supp. at 518 (CERCLA purpose). The proposed decree mainly addresses the CAA; however, as discussed previously, the provisions of the decree drastically reduce hazardous emissions and, in turn, protect and preserve public health and the environment. BP is also required to pay a $10 million civil penalty and invest an additional $10 million in supplemental environmental projects. It is clear the decree is consistent with both the CAA and CERCLA.

The purpose of the RCRA is to reduce generation of hazardous waste and to ensure proper treatment, storage, and disposal of waste which is nonetheless generated so as to minimize present and future threat to human health and the environment. 42 U.S.C. § 6902 (RCRA purpose). The decree requires BP to close and provide post-closure care and financial assurance for a former spent bender catalyst waste pile area located at the Whiting facility. The decree's relief is consistent with the RCRA.

▆ One of the purposes of the EPCRA is to compile accurate, reliable information on the presence and release of toxic chemicals and to make that information available at a reasonably localized level. *Citizens for a Better Environment v. Steel Co.,* 90 F.3d 1237, 1239 (7th Cir.1996), *vacated on other grounds,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (EPCRA purpose). Pursuant to the decree, BP may conduct an audit of each refinery's compliance with the EPCRA reporting obligations. To the extent a refinery conducts an audit, discloses violations, and corrects the conditions that gave rise to the noncompliance, BP will be released from any civil liability associated with its

noncompliance. Such provisions are consistent with the purpose of the EPCRA.

In total, the decree is consistent with all the applicable statutes.

Upon consideration of all the evidence, the parties' arguments, the commenters' comments, and the case law, this Court finds the proposed decree is fair, reasonable, adequate, and consistent with the applicable statutes. This Court does not find any of the commenters' now withdrawn objections to have any merit. Accordingly, the United States of America's Motion for Entry of Consent Decree is **GRANTED**. The decree will be entered and effective the date of this order.

*CONCLUSION*

For the reasons set forth above, the United States of America's Motion for Entry of Consent Decree is **GRANTED**. The Court notes that it previously granted the Government's motion for substitution of pages to the consent decree during the June 5, 2001, hearing. Accordingly, the revised pages attached to the motion for substitution of pages have been inserted into the final consent decree.